UNITED STATES OF AMERICA
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NARVEAL RAGGS | Case No. 25 CR 173<br><br>Chief Judge Virginia M. Kendall |

## GOVERNMENT'S SENTENCING MEMORANDUM

### I.  INTRODUCTION

In the early morning hours of November 15, 2024, defendant Narveal Raggs, who was armed with a firearm, and others attempted to break into a liquor store in Lincoln Park. The police arrived on scene before they could break into the store. Raggs's comrades escaped in two cars, but they left him behind. Raggs fled from the police on foot. As he ran through a nearby alley, Raggs tossed a loaded Glock 19 semiautomatic pistol, which had a switch and an extended magazine, onto the roof of a one-story building. Raggs was apprehended shortly thereafter. For the reasons discussed below, the Court should sentence Raggs to a term of imprisonment toward the high end of the applicable Sentencing Guidelines range.

### II.  FACTUAL BAKCKGROUND

On November 15, 2024, at approximately 3:30 a.m., officers with the Chicago Police Department responded to a 911 call concerning the attempted burglary of Lakeside Food Wine and Spirits, located at 2601 North Halsted Street in Chicago. Video surveillance footage of the attempted burglary are attached as Exhibit A and Exhibit B.

1



*Map reflecting approximate location of*
*Lakeside Food Wine and Spirits in Lincoln Park*

One of the offenders was Raggs, who was armed with a loaded Glock 19 pistol, bearing serial number BWGD516, with an extended magazine. The Glock pistol had been converted to shoot automatically more than one shot, without manual reloading, by a single function of the trigger.

 

*Screenshots from the store's video surveillance footage*
*depicting Raggs with the Glock pistol*

2

When police arrived on scene, they observed multiple offenders attempting to break into the liquor store. A gray Infinity collided into the officer's car and then fled southbound on Halsted; two other offenders got into a white Jeep and fled northbound on Halsted. They left Raggs behind. Video surveillance footage of law enforcement's arrival on scene is attached as Exhibit C.



*Screenshot from the store's video surveillance footage*
*depicting Raggs getting left behind when the police arrived on scene*

Raggs fled eastbound on foot and then turned north into the alley located behind the liquor store. As he fled through the alley, Raggs threw the Glock pistol onto the roof of a one-story building, where it was subsequently recovered. Video surveillance footage of Raggs throwing the Glock pistol is attached as Exhibit D.



*Screenshot from BWC recording depicting the*
*Glock pistol that Raggs threw onto the roof of the building*

Officers pursued Raggs and, approximately six minutes after the chase began, apprehended him in the alley behind 2623 North Halsted Street. Raggs was wearing a white t-shirt; he was not wearing any shoes. Asked what he was doing there, Raggs responded, "Just chilling." Officers canvassing the area where Raggs was arrested subsequently recovered the jacket and gloves that Raggs had discarded.

## III. GOVERNMENT'S POSITION ON SENTENCING

The government respectfully disagrees with Probation Office's Sentencing Guidelines calculation. According to the Probation Office, the base offense level is 22, pursuant to Guideline § 2K2.1(a)(3). PSR, ¶ 13. However, Raggs's conviction for the reckless discharge of a firearm is not a qualifying crime of violence. *See United States v. Lemus-Rodriguez*, 375 F. App'x 616, 618 (7th Cir. 2010) ("the Illinois offense of reckless discharge of a firearm is not a crime of violence"). The government agrees with the remainder of the Probation Office's Sentencing Guidelines calculations. *See* PSR, ¶¶ 14–36. With a total offense level of 23 and a criminal history category of IV, Raggs's Sentencing Guidelines range is 70–87 months' imprisonment. PSR, ¶ 70.

For the reasons discussed below, considering the Section 3553(a) factors, including the nature and circumstances of the offense as well as Raggs's personal history and characteristics, a sentence of imprisonment at the high end of the applicable Guidelines range, following by a within-Guidelines term of supervised release, is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide a just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public.

4

### A.    Sentencing Guidelines

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. To determine the sentence to impose, the Court must consider the statutory factors listed in Section 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Sentencing Guidelines are the sole factor in Section 3553(a) that provides an objective sentencing range that can practicably promote the overall goal of minimizing unwarranted sentencing disparities, which is itself a statutorily mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."). The Supreme Court created the advisory Guidelines system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences where necessary." *Booker v. United States*, 543 U.S. 220, 264–65 (2005). The only way to prevent widespread unwarranted disparities is to give serious consideration to the Sentencing Guidelines.

The Sentencing Guidelines also generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552

U.S. at 46. The Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Sentencing Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

### B. Prison Term

To his credit, Raggs accepted responsibility for his criminal conduct in this case. However, Raggs's acceptance of responsibility is already accounted for in the Guidelines range. PSR, ¶¶ 21–22. A sentence of imprisonment at the high end of the Guidelines range is warranted to reflect the seriousness of Raggs's offense conduct, promote respect for the law, provide a just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public.

Considering Raggs's criminal record, his offense conduct demonstrates a continued disrespect for the law and a real risk of recidivism. In 2016, Raggs was arrested for the aggravated unlawful use of a weapon in Chicago. PSR, ¶ 30. According to the arrest report, Raggs fled from a stolen car while in possession of a loaded Glock pistol with an extended magazine. *Id.* In February 2017, Raggs was released on bond in that case. A copy of the court docket (17CR0107702) is attached as Exhibit E. Two months later, Raggs was arrested again for the aggravated unlawful use of a weapon; in connection with his arrest and the recovery of the firearm, Raggs identified himself as a member of the Smashville faction of the

Ganster Disciples street gang. PSR, ¶ 31. In May 2017, Raggs was sentenced to a consecutive one-year terms of imprisonment in both gun cases. PSR, ¶¶ 30–31.

Raggs was released from state custody onto parole in March 2018. PSR, ¶¶ 30–31. On December 22, 2018, Raggs was arrested for the reckless discharge of a firearm. PSR, ¶ 32. Earlier that evening, Raggs and others were at a barbershop located in the East Beverly neighborhood of Chicago. As they left the barbershop, Raggs and two others pulled out guns and engaged in a shootout with a vehicle. Video surveillance footage of the shooting is attached as Exhibit F (1:19–2:30) and Exhibit G; *see also People v. Raggs*, 2023 IL App (1st) 210286-U, 2023 WL 8319142 (Dec. 1, 2023), a copy of which is attached as Exhibit H. While he was in state custody awaiting trial, Raggs was charged with battery, for which he was later convicted. PSR, ¶ 33. Following an October 2019 bench trial concerning the barbershop shooting, Raggs was convicted of being an armed habitual criminal and of the reckless discharge of a firearm. A copy of the bench trial transcript was attached as Exhibit 1 to the Government's Version of the Offense. In February 2021, Raggs was sentenced, respectively, to concurrent terms of six years' imprisonment and three years' imprisonment. PSR, ¶ 32. Raggs was released from state custody onto parole in January 2024. *Id*. Ten months later, Raggs committed the instant offense.

Despite his repeated contacts with the criminal justice system and the fact that he was still on parole, Raggs continued to engage in violent crime in our community. On November 15, 2024, Raggs participated in the attempted burglary of a store in Lincoln Park. Raggs did so while armed with a Glock pistol that had been converted

7

into an automatic weapon. The pistol had been reported as stolen in California in February 2024. A copy of the Sacramento Police Department report is attached as Exhibit I; *see also* PSR, ¶ 8. According to the National Integrated Ballistic Information Network (NIBIN), the pistol was involved in shootings in Chicago that occurred in July 2024 and August 2024. A copy of the NIBIN report is attached as Exhibit J; copies of the related police reports are attached as Exhibit K; *see also* PSR, ¶ 8. Although there is no other evidence connecting Raggs to those shootings, these incidents underscore the seriousness of Raggs's offense conduct. These pistols are not toys; they are dangerous weapons that are used to seriously harm others.

Moreover, the attempted burglary in Lincoln Park on November 15, 2024, was not a one-time regression to criminal conduct on Raggs's part following his release from state custody in January 2024. Instead, reports from the Calumet City Police Department and the Chicago Police Department show that Raggs had participated in at least two other armed burglaries days earlier.

On November 12, 2024, multiple armed subjects wearing masks broke into City Food Market in Calumet City. The offenders entered the store through a broken glass window and attached one end of a chain to the rear of a Jeep and the other end to the ATM inside the store; the Jeep then drove forward and pulled the ATM out from the business. As reflected in the screenshots below, one of the offenders who matched Raggs's build and appeared to be carrying a firearm with an extended magazine was wearing clothing matching that worn by Raggs during the November 15 attempted

burglary in Lincoln Park. A copy of the police report is attached as Exhibit L; video surveillance footage is attached as Exhibit M.



Two days later, on November 14, 2024, multiple armed subjects wearing masks broke into Fairplay Foods in Chicago. As before, the offenders entered the store through a broken glass window. They pointed firearms at an employee inside the store. The offenders attached one end of a chain to the rear of a Jeep an ATM inside the store; the Jeep then drove forward and pulled the ATM out of the store. As reflected in the screenshot below from the store's video surveillance footage, one of the armed offenders who matched Raggs's build was wearing clothing matching that worn by Raggs during the Lincoln Park attempted burglary. A copy of the police report is attached as Exhibit N; video surveillance footage is attached as Exhibit O and Exhibit P.

9



Firearm offenses are the primary cause for the most serious forms of violent crime in our community. *See United States v. Hendrix*, No. 21-3287, 2023 WL 4714727, at *6 (7th Cir. July 25, 2023) ("[W]e repeatedly have held that district courts may consider the serious problem of gun violence in Chicago in imposing stiff sentences on those who commit firearms offenses in the city."); *see also United States v. Hatch*, 909 F.3d 872, 875 (7th Cir. 2018) (affirming an above-Guidelines sentence where the court "situated [the defendant's] offense against … observations about widespread gun violence in Chicago"). The sentence imposed in this case must reflect the seriousness of, and provide a just punishment for, Raggs's criminal conduct. Given the serious nature of the offense, the sentence also must serve to deter Raggs and others from committing similar offenses in the future and, thereby, protect the public from harm.

### C. Supervised Release Term

Following his release from custody, Raggs should be placed on a within-Guidelines term of supervised release. While he is on supervised release, mandatory

conditions 1, 2, 5, 6, and 7 should be applied. PSR, p. 19. To facilitate supervision by the probation officer and, thereby, encourage Raggs's compliance with the law and deter him from committing future crimes, discretionary conditions 14, 15, 16, 17, and 18 should be applied. PSR, p. 20–21. To ensure that Brandon is behaving responsibly while on supervised release and, thereby, support his rehabilitation and reintegration into the community, discretionary conditions 1, 4, 6, and 7, as well as special condition 3, should be applied. PSR, p. 19–24. Lastly, to protect the public, including the probation officer, discretionary condition 8 and special condition 11 should be applied. PSR, p. 20, 26.

## IV.    CONCLUSION

For the foregoing reasons, the government requests that the Court impose a sentence toward the high end of the applicable Guidelines range, to be followed by a within-Guidelines term of supervised release.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    _____
JARED JODREY
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street, Room 500
Chicago, IL 60604
312-353-5358

11